UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN POHL, | CV F   03 6699 AWI NEW (DLB) P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 48.) |
| WARDEN OF CORCORAN STATE PRISON, et. al., | |
| Defendants. | |

**A.   RELEVANT PROCEDURAL HISTORY**

Adrian Pohl ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the instant action on November 26, 2003, naming as Defendants, Craven, Hill, Scott, Does 1-10, Frietas, Hall, Henson, Sanchez, Aguirre, Mascarenas, Dotson and the Warden.  Plaintiff informed the Court on March 24, 2005, that he wished to dismiss all Defendants from the action except Defendants Craven, Hill, Aguirre and Mascarenas on the Eighth Amendment medical claim. The Court issued Findings and Recommendations to dismiss those Defendants and the District Court adopted them on June 16, 2005.  This action is proceeding on the original Complaint against

Defendants Craven, Hill, Aguirre and Mascarenas for an alleged Eighth Amendment violation.

On December 15, 2006, Defendants filed a Motion for Summary Judgment. Plaintiff filed his Opposition to the Motion on February 20, 2007, and Defendants filed a Reply to the Opposition on March 1, 2007.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

1  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
2  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
3  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
4  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
5  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
6  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963
13 amendments).

14      In resolving the Motion for Summary Judgment, the Court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
17 255, and all reasonable inferences that may be drawn from the facts placed before the court must
18 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.
19 Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out
20 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
21 inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
22 Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

23      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
24 show that there is some metaphysical doubt as to the material facts.  Where the record taken as a
25 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
26 issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

27
28

C.  **UNDISPUTED FACTS**[1]

1. At the times alleged in the Complaint, Plaintiff was lawfully in custody of the California Department of Corrections and Rehabilitation.
2. Plaintiff was previously incarcerated under the name of Victor Hernandez.
3. Plaintiff was, at the times alleged in the Complaint, incarcerated at California State Prison Corcoran (Corcoran).
4. Plaintiff was received into the Department of Corrections and Rehabilitation on June 15, 2002, at North Kern State Prison ("NKSP").
5. While at NKSP, Plaintiff was issued a medical order, known as a chrono, for use of a cane at North Kern State Prison.
6. When Plaintiff was incarcerated under the name of Victor Hernandez, he was issued chronos for a cane.  Plaintiff as been diagnosed as having Morton's Neuroma.
7. Morton's Neuroma is a benign growth that develops on a nerve at the base of the toes, when a nerve becomes pinched between the toes.  It can cause pain, numbness, cramping, a burning sensation that spreads into the involved toes and a lump between the bases of the toes.  Treatment involves rest, massage, wearing roomy footwear, and in extreme cases, surgery.
8. The medical chrono issued at NKSP specifically stated "Inmate may use a CANE while at NKSP."
9. Plaintiff was medically evaluated when he arrived at Corcoran on September 13, 2002.
10. Inmates arriving at Corcoran are given a bed and cell assignment after they are medically evaluated.
11. Correctional officers are not authorized to change an inmate's bed or cell assignment.
12. Plaintiff was assigned to C-Facility, Building 3, Cell 216, second tier.

---

[1] The following facts are undisputed for the purpose of resolution of this Motion for Summary Judgment only.

4

13. When Plaintiff arrived in his assigned housing unit, Defendant Craven asked to see the chrono for his cane. Plaintiff produced a copy of the chrono from NKSP and Defendant Craven made a phone call.

14. Defendant Hill arrived and asked to see Plaintiff's chrono. Defendant Hill then made a telephone call, after which she informed Plaintiff that the NKSP chrono could not be honored at Corcoran.

15. Plaintiff was seen by a classification committee on September 17, 2002. Plaintiff told the committee about his concern that his cane chrono was not being honored. The committee told Plaintiff to contact the medical department.

16. On September 18, 2002, Plaintiff fell down the stairs in his housing unit.

17. Plaintiff was observed walking down the stairs when he began to fall with his knees in a bent position.

18. The stairs in the housing units at Corcoran are equipped with hand rails.

19. Plaintiff was taken to the prison emergency room, examined, prescribed medication and returned to his housing unit.

20. Plaintiff was reassigned to a cell on the lower tier on September 18, 2002.

21. Plaintiff was seen by a doctor on September 20, 2002, for the flu. Plaintiff requested the issuance of a chrono for a cane and lower bunk.

22. The treating physician ordered tests, x-rays, and a cane chrono. However, the doctor specifically refused to issue a chrono for a low bunk, low tier. The chrono for the cane was never issued.

23. Canes are often used as weapons. Thus, only inmates with a verified medical need are allowed to possess them. Unless an inmate has a valid medical order for a cane, it is considered contraband.

24. Plaintiff was allowed to maintain possession of the cane until he could obtain an order for its possession from the medical department. However, after it was taken from him, it was placed in the housing unit office and was given to him upon request. Plaintiff was not permitted to have the cane in his cell.

1  25. After a medical order issues for a cane, the cane itself is issued by medical staff.
2  Correctional Officers do not have access to medical appliances and are not
3  authorized to dispense them to inmates.

**D. ANALYSIS**

   *1. Summary of Complaint*

Plaintiff states that he arrived at Corcoran State Prison ("Corcoran") on September 13, 2002, from North Kern State Prison and was asked about his medical conditions. Plaintiff stated that he walked with a cane and produced a valid chrono issued at NKSP. (Complaint at 4.) Plaintiff was allowed to leave the Receiving and Release building with the cane.

Upon plaintiff's arrival at the C-Facility, Plaintiff was informed that he would be housed in the second tier in cell 216. (Complaint at 4.) Correctional Officer Craven also inquired as to Plaintiff's cane. Plaintiff then informed Defendant Craven that he had a chrono for use and possession of the cane and provided it to him. Defendant Craven reviewed the chrono and made a phone call. Defendant Hill then arrived, reviewed the chrono and also made a phone call. Defendant Hill then informed Plaintiff that the chrono would not be honored because it was not issued at Corcoran. Defendant Hill then informed Plaintiff that he was going to be on "orientation" and would not be leaving his cell. Id.

On September 17, 2002, Plaintiff was informed that he would be appearing at a Initial Classification Committee hearing. Plaintiff states he came out of his cell and requested help but none was given. Plaintiff was able to make it down the stairs without assistance. At the ICC hearing, Plaintiff informed the committee of his need for use of the cane. Id. Plaintiff was informed that he should contact the medical department to have the cane issue addressed.

On September 18, 2002, Plaintiff attempted to go down the stairs and fell. Plaintiff was taken to the prison infirmary. (Complaint at 5.) At the infirmary, Plaintiff informed medical staff and Dr. Sanchez that his back was hurt from the fall. Plaintiff was given medication and was returned to his unit. (Complaint at 5-6.) When Plaintiff reached his housing unit, all of his personal belongings had been moved to a cell on the bottom tier.

On September 20, 2002, Plaintiff visited the infirmary for an x-ray. Upon his return from

6

x-ray, he realized that his cane had been removed from his cell. (Complaint at 6.) Plaintiff asked Defendants Aguirre and Mascarenas about the cane and was informed that because his chrono was not issued at Corcoran he could not keep the cane in his possession. (Complaint at 6.) Plaintiff then showed Defendants Aguirre and Mascarenas the chrono issued at North Kern State Prison which they confiscated because it too constituted contraband. Plaintiff states that the Defendants refused to let him speak with the Sergeant and left him without use of the cane.

### 2. *Claims for Relief*

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (*citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate

indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*).  Moreover, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

Defendants argue that they are entitled to summary judgment because they are not the proximate cause of Plaintiff's injury on September 28, 2002, and did not act with deliberate indifference in confiscating a cane that Plaintiff did not have permission to have.

In support of these assertions, Defendants identify undisputed evidence that the chrono issued to Plaintiff for use and possession of the cane was valid only at NKSP. (UF #8.)  In addition, on September 13, 2002, Defendants Hill and Craven merely informed Plaintiff that the chrono would not be honored at Corcoran. (UF # 13, 14.)  Plaintiff states in his Complaint that he was able to negotiate the stairs without assistance on September 17, 2002, when he appeared before the Classification Committee. (Compl.at 5.)  On September 18, 2002, Plaintiff was observed walking down the stairs when he fell. (UF # 17.)  Plaintiff was taken to the infirmary and returned to his cell on a lower tier later that day. (UF # 19, 20.)  At this time, Plaintiff noticed that the cane he had kept in his cell was now missing. (Compl. at 6.)

On September 20, 2002, Plaintiff seen a physician for treatment for the flu and requested that the physician reissue the chrono for use of the cane and a lower bunk. (UF # 21.)  Although the doctor ordered tests, x-rays and a cane chrono, the chrono for the cane was never issued. (UF #22.)

1    The Court finds that Defendants have met their initial burden of informing the Court of
2 the basis for their Motion, and identifying those portions of the record which they believe
3 demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to
4 Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See
5 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

6    As stated above, in attempting to establish the existence of this factual dispute, Plaintiff
7 may not rely upon the mere allegations or denials of his pleadings, but is required to tender
8 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
9 support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
10 First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747,
11 749 (9th Cir. 1973).

12    In opposition to the Motion, Plaintiff maintains that his rights were violated when
13 Defendants Aguirre and Mascarenas confiscated his cane.  In support of his Opposition, Plaintiff
14 also provides the Court with a copy of the chrono issued at NKSP indicating that it was valid
15 only for use at NKSP.  (Exh. A, 1, Opposition).  Plaintiff presents no other evidence to create a
16 disputed issue of material fact as to the Eighth Amendment claim.

17    As noted above, Plaintiff must demonstrate that the Defendants knew of and disregarded
18 a risk to his health.  With regard to Defendants Craven and Hill, the evidence shows that they
19 inquired into the validity of the chrono Plaintiff provided them and informed him that it would
20 not be honored at Corcoran.  There is no evidence that the Defendants confiscated either the cane
21 or the chrono on September 13, 2002, when they provided this information to Plaintiff.  The
22 mere fact that these two Defendants relayed certain information to Plaintiff does not establish an
23 Eighth Amendment violation.  As such, Defendants Craven and Hill are entitled to summary
24 judgment.

25    Further, on September 18, 2002, when Plaintiff suffered his fall, he had possession of the
26 cane.  It is undisputed that Plaintiff used the stairs on September 17, 2002, without assistance.
27 On September 28, 2002, Plaintiff was observed walking down the stairs when he fell.  However,
28 it was two days later when the cane as actually confiscated from Plaintiff.  Although Plaintiff

again presented Defendants Aguirre and Mascarenas with the chrono issued at NKSP, he was again informed that he did not have permission for use of the cane while at Corcoran. As indicated by Defendants, the fact that a chrono did not subsequently issue did not stem from any actions taken by Defendants Aguirre or Mascarenas as the physician Plaintiff saw on September 20, 2002, ordered a cane chrono but it never issued. Plaintiff does not present evidence to create a disputed issue of fact that Defendants Aguirre or Mascarenas had any control over the issuance of or dispensation of the cane itself. Accordingly, the Court finds that Defendants Aguirre and Mascarenas are also entitled to summary judgment.

**E.  CONCLUSION AND RECOMMENDATION**

Accordingly, the Court HEREBY ORDERS that the Motion for Summary Judgment be GRANTED and the case DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 10, 2007**              /s/ Dennis L. Beck
                              UNITED STATES MAGISTRATE JUDGE